IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| MARK FITZHENRY, individually and on behalf of a class of all persons and entities similarly situated,<br><br>   Plaintiff<br><br>vs.<br><br>GUARDIAN PROTECTION SERVICES, INC., and SECURITY FORCE, INC.<br><br>   Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT |

**CLASS ACTION COMPLAINT**

1. Plaintiff Mark Fitzhenry ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communications Commission.[1]

3. The TCPA is designed to protect consumer privacy by prohibiting unsolicited, autodialed calls, unless the caller has the "prior express written consent" of the called party.

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶1 (July 10, 2015).

1

4. Plaintiff alleges that Defendant Security Force, Inc. ("Security Force") commissioned an automated telephone call using equipment prohibited by the TCPA to send a robocall that promoted its services without the Plaintiff's prior express written consent.

5. Security Force commissioned the pre-recorded call in its role as an authorized dealer for Guardian Protection Services, Inc. ("Guardian").

6. Because the call to the Plaintiff was transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing call.

7. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**PARTIES**

8. Plaintiff Mark Fitzhenry is a resident of the state of South Carolina.

9. Defendant Guardian Protection Services, Inc. is a Pennsylvania corporation that has its principal place of business in this District.

10. Defendant Security Force, Inc. is a North Carolina corporation.

**JURISDICTION & VENUE**

11. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28

U.S.C. 1332(d)(2). The matter in controversy exceeds $5,000,000.00, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a national class, which will likely result in at least one Class member from a different state.

12. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

13. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the contract between Guardian and Security Force was entered into in this District. Furthermore, Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, and because Defendants' contacts with this District are sufficient to subject them to personal jurisdiction. *See* 28 U.S.C. § 1391.

## **TCPA BACKGROUND**

14. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

15. Unlike many federal statutes, Congress embedded the reasons for the TCPA into the statute itself with explicit Congressional Findings. 105 Stat. 2394, §§ 10, 12, 14 (notes following 47 U.S.C. § 227).

16. *Mims* explicitly cited these Congressional Findings in noting that "'automated or prerecorded telephone calls' . . . were rightly regarded by recipients as 'an invasion of privacy.'" *Id.* (citing 105 Stat. 2394). Accordingly, Congress found that:

> ***Banning such automated or prerecorded telephone calls*** to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, ***is the only effective means of protecting telephone consumers*** from this nuisance and privacy invasion.

*Id.* at § 14 (emphasis added).

17. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

18. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[2]

19. Indeed, as the United States Supreme Court recently held in a different context, "Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many

---

[2] *In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14115 (¶ 165) (2003).

Americans 'the privacies of life.'" *Riley v. California,* __ U.S. __, 134 S.Ct. 2473, 2494-95, 189 L.Ed.2d 430 (2014).

20. As such, the TCPA's most stringent restrictions pertain to computer-generated telemarketing calls placed to cell phones.

21. The TCPA categorically bans entities from initiating telephone calls using an automated telephone dialing system (or "autodialer") to any telephone number assigned to a cellular telephone service. *See* 47 C.F.R. § 64.1200(a)(1)(iii); *see also* 47 U.S.C. § 227(b)(1).

22. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party.[3]

## FACTUAL ALLEGATIONS

23. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

24. The Plaintiff acquired the cellular telephone number, (843) 637-XXXX that got the pre-recorded message calls in October 2015.

25. The Plaintiff has used the cellular telephone number for both personal reasons, as well as to attempt to collect rent in arrears from tenants in the properties he owns.

26. As discussed in more detail below, the Defendants use telemarketing to promote the goods and services of Guardian.

---

[3] *In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, Declaratory Ruling, 23 FCC Rcd 559, 564-65 (¶ 10) (2008) ("2008 FCC Declaratory Ruling").

27. The Defendants telemarketing efforts include the use of automated dialing equipment to send text messages.

28. On August 12, 2016, the Plaintiff received a call on his cellular telephone.

29. The Caller ID for the number that called the Plaintiff was (720) 634-7479.

30. When the Plaintiff answered the call there was a distinctive click and pause, then a pre-recorded message that advertised a home security system.

31. These facts, as well as the geographic distance between the Plaintiff and the Defendant, as well as the fact that this call was part of a nationwide telemarketing campaign demonstrate that the call was made using an automatic telephone dialing system ("ATDS" or "autodialer") as that term is defined in 47 U.S.C. § 227(a)(1).

32. When Mr. Fitzhenry was able to connect with a live individual, they attempted to sell him a home alarm system that would have been monitored by Guardian.

33. Mr. Fitzhenry was harmed by the pre-recorded calls because they were unwelcome intrusions on his privacy and because they occupied his telephone line from legitimate communications.

34. Defendants did not have the Plaintiff's prior express written consent to make this call, and the Plaintiff has never done any business with the Defendants.

## GUARDIAN'S AUTHORIZED DEALER PROGRAM
## AND LIABILITY FOR THE AUTOMATED ROBOCALLS

35. Under the TCPA, a seller of a product or service may be vicariously liable for a third-party marketer's violations of Section 227(b), even if the seller did not physically dial the illegal call, and even if the seller did not directly control the marketer who did. *In re Joint Pet. filed by Dish Network, LLC*, FCC 13-54 ¶ 37, 2013 WL 193449 (May 9, 2013) ("FCC Ruling").

36. A seller is liable under Section 227(b) when it has authorized a telemarketer to market its goods or services. *Id.* ¶ 47.

37. Additionally, a seller may be vicariously liable for a Section 227(b) violation under principles of apparent authority and ratification. Factors relevant to a finding of vicarious liability include:

    a. Whether "the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including . . . access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information;

    b. Whether the outside sales entity can "enter consumer information into the seller's sales or customer systems;

    c. Whether the outside sales entity has "the authority to use the seller's trade name, trademark and service mark;

    d. Whether "the seller approved, wrote or reviewed the outside entity's telemarketing scripts"; and

    e. "Whether the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct."

7

*Id.* ¶ 46.

38. The May 2013 FCC Ruling further held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 F.C.C.R. at 6586 (¶ 34).

39. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.

*Id.* at ¶ 46.

40. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information. " *Id.* at 6592-93 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

41. The FCC had previously explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

42. Security Force commissioned the autodialed and prerecorded message calls described herein "on behalf of" Guardian within the meaning of the FCC's Declaratory Rulings.

43. Guardian was legally responsible for ensuring that Security Force complied with the TCPA, even if Guardian did not themselves make the calls.

44. Guardian self-proclaims to be the nation's largest privately-held security company, and that it provides security and monitoring services to more than a quarter-million residential and commercial customers.

45. Guardian markets and distributes products via a distribution network of authorized dealers.

46. Guardian compensates each authorized dealer through a structure of commission payments based upon the amount of product and services sold.

47. Guardian allows its authorized dealers to market Guardian's products and services, to display the Guardian logo and to market using the Guardian trade name.

48. In fact, as Guardian advertises on its website, authorized dealers are a "partner" of Guardian. *See* http://www.guardianprotection.com/become-a-dealer/dealer-program-details.aspx (Last Visited August 18, 2016).

9

49. Guardian also offers to "finance your business" for its authorized dealers. *Id.*

50. Guardian authorized dealers promotes these systems through a variety of marketing methods, including telemarketing.

51. Guardian provides its authorized dealers with sales techniques and training, which were implemented in the telemarketing calls that are the subject of this complaint.

52. Guardian sells its security alarm systems through these authorized dealers and allows its dealers to hold themselves out to public as authorized Guardian dealers.

53. Guardian gives their authorized dealers substantial power to affect their legal relations with third parties, including with consumers generally.

54. One of Guardian's authorized dealers is Security Force, Inc., the same entity that commissioned the pre-recorded telemarketing call to the Plaintiff.

55. By hiring Security Force as an authorized dealers to generate customers through telemarketing Guardian "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency. Similarly, by accepting these contacts, Security Force "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Guardian, as described in the Restatement (Third) of Agency. As such, Security Force is an agent of Guardian.

56. Guardian cloaked their authorized dealers in apparent authority specifically as to legal relations between their authorized dealers and the public, and to hire third parties such as Security Force to perform telemarketing, sufficient to support vicarious liability pursuant to the TCPA.

57. Guardian knew (or reasonably should have known) that Security Force was violating the TCPA on its behalf, and failed to take effective steps within their power to force them to cease that conduct.

58. Guardian is also liable for the autodialed and prerecorded message calls because it installed security services and knowingly and actively accepted business that originated through the illegal telemarketing calls.

59. Security Force transferred customer information directly to Guardian. Thus, Security Force has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling. As such, Security Force is an apparent agent of Guardian.

60. Security Force was also granted access to the "Dealer Automated Real Time" (DART) program, a password-protected program through which they received updates on accounts and distributed customer information to Guardian.

### Class Action Statement Pursuant to LCvR 23

61. As authorized by Rule 23 of the Federal Rules of Civil Procedure and LCvR 23 of the Local Rules for the Western District of Pennsylvania,

11

Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

62. The class of persons Plaintiff proposes to represent include:

All persons within the United States whom Defendants, directly or through any third parties, initiated a telephone call with the same or similar dialing system as was used to call plaintiff to a number registered as a cellular telephone line within four years before this Complaint was filed through the date of class certification.

63. Excluded from the classes are the Defendants, any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

64. The proposed class members are identifiable through phone records and phone number databases.

65. The potential class members number in the thousands, at least. Individual joinder of these persons is impracticable.

66. Plaintiff is a member of the class.

67. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a. Whether the Defendants' used an automatic telephone dialing system to make the calls at issue;

    b. Whether the Defendants' placed telemarketing calls without obtaining the recipients' valid prior express written consent;

    c. Whether the Defendants' violations of the TCPA were negligent, willful, or knowing; and

12

       d.    Whether the Plaintiff and the class members are entitled to statutory damages as a result of the Defendants' actions.

68. Plaintiff's claims are based on the same facts and legal theories as the claims of all class members, and therefore are typical of the claims of class members, as the Plaintiff and class members all received telephone calls through the same or similar dialing system on a cellular telephone line.

69. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions. In fact, the Plaintiff has foregone a simpler path to recovery by filing this matter as a putative class action, as opposed to an individual claim.

70. The actions of the Defendant are generally applicable to the class as a whole and to Plaintiff.

71. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

72. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

73. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## CAUSES OF ACTION

### FIRST COUNT

### STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. §  227 *ET SEQ.*

74. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

75. The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

76. As a result of the Defendants' violations of 47 U.S.C. §  227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

77. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

### SECOND COUNT

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

78. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

79.     The foregoing acts and omissions of the Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

80.     As a result of the Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

81.     Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendants in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against the Defendants:

A.     Injunctive relief prohibiting such violations of the TCPA by the Defendants in the future;

B.     As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA;

C.     As a result of Defendants' statutory violations of 47 U.S.C. § 227(b)(1), Plaintiff seek for himself and each Class member $500 in statutory damages for each and every call that violated the TCPA;

D.     An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

E.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

F.     Such other relief as the Court deems just and proper.

Dated: August 18, 2016          By:     /s/ *Clayton S. Morrow*
                                         Clayton S. Morrow
                                         Email: csm@consumerlaw365.com
                                         Morrow & Artim, PC
                                         304 Ross Street, 7th Floor
                                         Pittsburgh, PA 15219
                                         Telephone: (412) 209-0656

                                         Edward A. Broderick
                                         Email: ted@broderick-law.com
                                         Anthony Paronich
                                         Email: anthony@broderick-law.com
                                         BRODERICK LAW, P.C.
                                         99 High St., Suite 304
                                         Boston, Massachusetts  02110
                                         Telephone:  (617) 738-7080
                                         *Subject to Pro Hac Vice*

                                         Matthew P. McCue
                                         Email:  mmccue@massattorneys.net
                                         THE LAW OFFICE OF MATTHEW P. MCCUE
                                         1 South Avenue, Suite 3
                                         Natick, Massachusetts  01760
                                         Telephone:  (508) 655-1415
                                         *Subject to Pro Hac Vice*